UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM LEROY HICKS,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No.  2:15-cv-0978 AC<br><br><br><br>ORDER |

Petitioner seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI")[1] and Disability Insurance Benefits ("DIB")[2] under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1381-1383f.  For the reasons that follow, plaintiff's motion for summary judgment will be granted and defendant's cross-motion for summary judgment will be denied.  The matter will be remanded to the Commissioner for further proceedings.

---

[1]  SSI is paid to financially needy disabled persons.  42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) (Title XVI of the Act, § 1381 et seq., is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels).

[2]  DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).

1

I. PROCEDURAL BACKGROUND

Plaintiff initially applied for SSI and DBI on September June 12, 2012, Administrative Record[3] ("AR") 11, (ECF No. 12-3 at 12) (Decision)[4] alleging his disability began on March 5, 2009. Id. The claims were initially denied on August 6, 2012, and on reconsideration on October 8, 2012. Id. Plaintiff then filed a request for hearing on October 25, 2012. 20 CFR 416.1429 et seq. Id. Administrative Law Judge ("ALJ") Mark C. Ramsey presided over a hearing on June 19, 2013 attended by plaintiff and plaintiff's attorney. AR 11 (ECF No. 12-3 at 12).

On August 23, 2013, the ALJ found plaintiff "not disabled" under sections 216(i), 223(d) (DBI benefits) and 1614(a)(3)(A) (SSI) of the Social Security Act. AR 23 (ECF 12-3 at 24). Plaintiff requested review by the Appeals Council, which request was denied on March 6, 2015. AR 1 (ECF No. 12-3 at 2-6). Plaintiff filed his Complaint in this court on May 6, 2015. ECF No. 1. The parties consented to the jurisdiction of the Magistrate Judge. ECF Nos. 7 (plaintiff) and 9 (defendant). The cross-motions for summary judgment based upon the Administrative Record filed by the Commissioner have been fully briefed. ECF No. 18 (plaintiff's summary judgment motion filed December 16, 2015; ECF No. 27 (defendant's cross-motion for summary judgment filed July 6, 2016).

II. FACTUAL BACKGROUND

Plaintiff was born on September 10, 1972 and was 36 years old on the alleged onset date of his disabilities and 40 years old on the date the application was filed. AR 21 (ECF No. 12-3 at 22). Plaintiff has at least a high school education and can communicate in English. Id.

III. LEGAL STANDARDS

The Commissioner's decision that a plaintiff is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . .". Andrews

---

[3] The Administrative Record, comprising 1,540 pages was filed in twenty-eight (28) parts and is found at ECF No. ECF Nos. 12 and 13.

1  v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 406(g)).

2  Substantial evidence is "more than a mere scintilla [but] may be less than a
3  preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Substantial evidence
4  "means such relevant evidence as a reasonable mind might accept as adequate to support a
5  conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotations omitted).
6  "While inferences from the record can constitute substantial evidence, only those 'reasonably
7  drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)
8  (citation omitted). Although this court cannot substitute its discretion for that of the
9  Commissioner, the court nonetheless must review the record as a whole, "weighing both the
10  evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."
11  Desrosiers v. Secretary of HHS, 846 F2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d
12  993, 95 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that
13  detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of
14  supporting evidence.")

15  "The ALJ is responsible for determining credibility, resolving conflicts in medical
16  testimony, and resolving ambiguities." Edlund v. Massnari, 253 F.3d 1152, 1156 (9th Cir. 2001).
17  Where the evidence is susceptible to more than one rational interpretation, one of which supports
18  the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947,
19  954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his
20  decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue,
21  495 F3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was
22  error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ
23  did not discuss").

24  The court will not reverse the Commissioner's decision if it is based on harmless error,
25  which exists only when it is "clear from the record that an 'ALJ's error was inconsequential to the
26  ultimate nondisability determination.'" Robbins v. SSA, 466 F.3d 880, 885 (9th Cir. 2005)
27  (quoting Stout v. Comm'r, 454 F.3d 1050-1056 (9th Cir. 2006)); see also Burch v. Barnhart, 400
28  F.3d 676, 679 (9th Cir. 2005).

## IV. RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every individual who is "disabled." 42 U.S.C. §§ 423(d)(1)(A), 1382(a)(3)(A). The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation steps:

> Step one: Is the plaintiff engaging in substantial gainful activity? If so, the plaintiff is not disabled. If not proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the plaintiff have a "severe" impairment? If so, proceed to step three. If not, the plaintiff is not disabled.

Id. §§ 404.1520(a)(4)(v), (g)

> Step three: Does the plaintiff's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App.1? If so, plaintiff is disabled. If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the plaintiff's residual functional capacity make him capable of performing his past work? If so, the plaintiff is not disabled. If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the plaintiff have the residual functional capacity to perform any other work? If so, the plaintiff is not disabled. If not, the plaintiff is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

The plaintiff bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 20 C.F.R. § 416.912(a) (same). However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the plaintiff is not disabled

4

and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012).

V.  THE ALJ'S FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. [Step One]  The claimant has not engaged in substantial gainful activity since March 5, 2009, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*). […]

3. [Step Two] The claimant has the following severe impairments: multilevel spondylosis and spinal stenosis, degenerative disc disease, hip/joint osteoarthritis, depression, bipolar disorder and anxiety (20 CFR 404.1520(c) and 416.920(c)).  […]

4. [Step Three] The claimant does not have an impairment or combination of impairments that meet or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 414.1526, 416.920(d),416.925 and 416.926). […]

5. [Residual Functional Capacity ("RFC")]  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except simple, unskilled work with little changes in the work routine and limited public contact.  […]

6. [Step Four]  The plaintiff is unable to perform past relevant work (20 CFR 404.1565 and 416.965).  […]

7. [Step Five] The claimant plaintiff was born September 10, 1972 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. [Step 5, continued]  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. [Step Five, continued] Considering the plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the plaintiff can perform (20 CFR 404.1569, 404.1569(a). 416.969, and 416.969(a)). […]

AR 13-21 (ECF No. 12-3 at 14-22) (excerpted).

5

VI. ANALYSIS

Plaintiff's appeal is limited to the ALJ's assessment of his mental impairments and related functional limitations. He contends that the ALJ erred by (1) failing to credit, in formulating the RFC, opinion evidence which he purported to accord "substantial" and "great" weight; and (2) failing to credit plaintiff's testimony and third party statements regarding the severity of his symptoms and functional limitations.

A. The ALJ's Consideration Of Mental Health Opinion Evidence

1. The Evidence

The record before the ALJ did not include the opinion of a treating physician. The following examining and reviewing sources provided assessments of plaintiff's mental functioning:

a. Dr. Richard Hicks, M.D.

Dr. Hicks interviewed plaintiff on November 7, 2009. AR 411-14 (ECF No. 12-9 at 50-53). He provided an Axis I diagnosis of Adjustment Disorder with Depressive Features, and methamphetamine and alcohol abuse in remission. A speech impediment was noted. Dr. Hicks assessed no wok related restrictions with respect to mental impairments. AR 414 (ECF No.12-9 at 53).

b. Dr. Amy Eargle, Ph.D.

Dr. Eargle performed a psychological examination of plaintiff on June 10, 2011. AR 537 (ECF No. 12-10 at 85). The doctor noted that plaintiff had a speech impediment and spoke slowly with long periods of silence. AR 540 (ECF No. 12-10 at 88). His affect was anxious and his mood depressed. AR 541(ECF No. 12-10 at 89). Dr. Eargle's diagnosis was mood disorder NOS, back pain, and severe psychosocial stressors. AR 542 (ECF No. 12-10 at 90). She found mild impairments in performance of complex and detailed tasks, interaction with supervisors, coworkers and others, and no impairment in the performance of simple and repetitive tasks, understanding, implementing and remembering instructions without special or additional guidance, responding appropriately to typical and novel work situations, and responding appropriately to situations involving urgency or safety. Id. Plaintiff's ability to complete a

normal workweek and to maintain regular attendance without interruption from a psychiatric condition was mildly impaired, due both to mood symptoms and substance use. AR 543 (ECF No. 12-10 at 91).

The ALJ gave "moderate" weight to this opinion overall. He rejected Dr. Eargle's finding of mild impairment in ability to maintain work schedules without interruption, as inconsistent with evidence that plaintiff had held several jobs for long periods of time and had worked after his alleged onset date. AR 18 (ECF No. 12-3 at 19).[5]

### c. Dr. Ona Stiles, Ph.D.

Dr. Stiles performed a psychological examination of plaintiff on June 29, 2012 at the request of the Agency. AR 1115 (ECF No. 13-1 at 49). The plaintiff was viewed as a reliable historian, and he reported mental health symptoms of bipolar disorder and learning disability. Id. Plaintiff reported that he continued to have mood swings on a daily basis, but with medication (Depakote) they were in the moderate range. AR 1116 (ECF No. 13-1 at 50). Plaintiff professed to be independent in activities of daily living including preparing meals, doing light household chores, and making change at the store, and reportedly spent his days "going to Loaves and Fishes to shower and eat lunch." AR 1117 (ECF 13-1 at 51).

Plaintiff "presented in an anxious manner," had some difficulty breathing, and demonstrated a significant speech impairment. Id. His stuttering "worsened significantly with anxiety." AR 1118 (ECF 13-1 at 52). His attention, concentration and memory for recently learned information was fair due to anxiety, and his ability for abstraction was fair to poor. Id. His test results were average for perceptual reasoning, low average for processing speed and borderline for verbal comprehension and working memory. Id. His memory impairments may have been impacted by his high level of anxiety. AR 1119 (ECF No. 13-1 at 53). He showed moderate difficulty with sustained attention and mental tracking. Id. Dr. Stiles diagnosed

---

[5] Plaintiff's earning records showed his annual income to range between $12,000 and $19,000 through 2007, dropping to $11,707 in 2008, to $386.00 in 2009, the year of his accident, and $942.82 in 2010. AR 219-220 (ECF No. 12-6 at 20-21). Plaintiff's stated date of disability onset was March 5, 2009. In addition, plaintiff testified at the hearing that he last worked in 2010. AR 38 (ECF No. 12-3 at 39). The ALJ expressly found that plaintiff's work activity after March 5, 2009 did not rise to the level of "substantial gainful activity." AR 13 (ECF No. 12-3 at 14).

plaintiff with bipolar disorder, stuttering, learning disorder NOS, and anxiety disorder NOS (possible panic disorder); assigned a Global Assessment of Functioning (GAF)[6] score of 48; and gave a prognosis of "fair with comprehensive treatment." Id.

In her functional assessment Dr. Stiles found, based on her observations, significant anxiety which was "likely to significantly impair everyday functioning." AR 1120 (ECF 13-1 at 54). With regard to cognitive functioning she found plaintiff is "likely to have moderate impairment in verbal comprehension and in retaining some new information," and that "[h]is significant level of anxiety may also impair his cognitive abilities." Id. As to work related abilities, Dr. Stiles found plaintiff could understand, remember and carry out simple instructions but he had moderate difficulty maintaining attention and concentration for the duration of the evaluation "due to stress," and would be likely to have "moderate to significant difficulty adapting to changes in routine work-related settings" and "moderate impairment in his ability to interact with the public supervisors, and coworkers." Id.

The ALJ stated that he gave Dr. Stiles' opinion "substantial" weight because it was based on multiple psychometric tests and an in-depth analysis of plaintiff's psychiatric history. AR 17-18 (ECF No. 12-3 at 18-19).

    d.   State Agency Reviewers

The ALJ considered the medical source statements of two non-examining psychological consultants, S. Regan, M.D. and David E. Gross, M.D. In a report dated July 3, 2012, Dr. Regan rated plaintiff's primary affective disorder, secondary anxiety disorder, and co-occurring learning disorder all as "severe." He opined that plaintiff had mild restriction of daily activities, moderate difficulties in maintaining social functioning, and moderate restrictions in maintaining

---

[6] The Ninth Circuit has defined a GAF score as a "rough estimate" of an individual's psychological, social and occupational functioning, used to reflect the individual's need for treatment. Garrison v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014) (quoting Vargas v. Lambert, 159 F.3d 1161, 1164 (9th Cir. 1998)). A GAF score of 41-50 describes "serious symptoms" or "any serious impairment in social, occupational or social functioning," while scores of 51-60 describe "moderate symptoms." Id. Because GAF scores "are typically assessed in controlled, clinical sets that may differ from work environments in important respects," they are not determinative of disability. However, they are "a useful measurement" of functioning. Id.

concentration, persistence, or pace. AR 101 (ECF No. 12-4 at 35). Dr. Regan specifically found that plaintiff was moderately limited in his ability to: maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; get along with coworkers or peers without distracting them or exhibiting behavior extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and respond appropriately to changes in the work setting. It was also Dr. Regan's opinion that plaintiff was markedly impaired in his ability to: understand, remember, and carry out detailed instructions; and interact with the public. AR 84-85 (ECF No. 12-4 at 18-19). Dr. Gross affirmed these findings on October 8, 2012. AR 126-129, 146-149 (ECF No. 12-4 at 60-63, 80-83).

The ALJ gave great weight to these reports, on grounds they were based on a thorough review of the file and the reviewing doctors were "familiar with the Social Security Administration's disability programs and their evidentiary requirements." AR 19-20 (ECF No. 12-3 at 20-21).

2. Discussion

The ALJ found, presumably based on the evidence of plaintiff's physical impairments, that plaintiff has the residual functional capacity to perform light work. In light of plaintiff's mental impairments, three limitations were added: the light work must be simple and unskilled work; it must involve little (or few) changes to the work routine; and must involve only limited public contact. AR 15 (ECF No. 12-3 at 22) et seq. Relying on the Medical-Vocational Guidelines (commonly known as "the Grids") rather than vocational expert testimony, the ALJ then found that such jobs exist in significant numbers in the economy. AR 21-23 (ECF No. ECF No. 12-3 at 22-24).[7] He therefore concluded that plaintiff is not disabled within the meaning of the Act. AR 23 (ECF No. 12-3 at 24).

////

---

[7] See Hoopai v. Astrue, 499 F.3d 1071 (9th Cir. 2007).

1    Plaintiff contends that the RFC fails to capture significant findings of Dr. Stiles and the
2    reviewing psychological consultants, whose opinions the ALJ purported to accord "substantial"
3    and "great" weight, respectively. The Commissioner argues that the limitations found by those
4    doctors are expressly and adequately accommodated by the RFC. The Commissioner is correct
5    that the limitations incorporated into the RFC respond directly to findings of Drs. Stiles, Regan
6    and Gross regarding plaintiff's impaired abilities to follow detailed or complex instructions, adapt
7    to routine changes in the environment, and interact with the public. However, plaintiff is correct
8    that the RFC nonetheless fails to fully account for Dr. Stiles' findings regarding the severe
9    impacts of stress on plaintiff's functioning.

10   Social Security Ruling ("SSR") 85-15 addresses the impact of work-related mental
11   limitations. It provides in relevant part as follows:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (*on a sustained basis*) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet *any* of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

18   SSR 85-15 (emphases added). While SSRs do not carry the "force of law," they are binding on
19   ALJs nonetheless. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1224 (9th Cir. 2009).
20   The Ninth Circuit gives them deference so long as they do not produce "a result inconsistent with
21   the statute and regulations." Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991).

22   Although the RFC at issue here accounts for plaintiff's functional inability to follow
23   detailed or complex instructions, to adapt easily to changes in the environment, and to interact
24   with the public, it does not account for Dr. Stiles' finding that plaintiff's anxiety is likely to also
25   impair his ability to interact with supervisors and coworkers. AR 1120 (ECF No. 13-1 at 54).
26   Without that ability, plaintiff cannot perform even light work. SSR 85-15.

27   Dr. Stiles' opinion, which the ALJ found was entitled to significant weight, addressed
28   numerous ways in which plaintiff's anxiety rendered him acutely susceptible to stress and

10

impaired in his psychological/behavioral functioning, cognitive functioning, and work-related abilities. AR 1120 (ECF No. 13-1 at 54).  SSR 85-15 requires special consideration of these factors:

> The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day. A person may become panicked and develop palpitations, shortness of breath, or feel faint while riding in an elevator . . . Thus, the mentally impaired may have difficulty meeting the requirement of even so-called "low stress" jobs.
>
> Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. . . . Any impairment-related limitations created by an individual's response to demands of work, however, must be reflected in the RFC assessment.

SSR 85-15.[8]

The Commissioner relies on Stubbs-Danielson v. Astrue, 539 F.3d 1169 (9th Cir. 2008) for the proposition that merely "moderate" mental health impairments do not require a more restrictive RFC.  The court finds Stubbs-Danielson inapposite here.  That case dealt with the degree to which moderate limitations in pace were incorporated into the ALJ's RFC.  On the facts of the case, the court found that the ALJ adequately captured the claimant's pace limitations because the RFC was consistent with the restrictions identified in the medical testimony.  Stubbs-Danielson, 539 F.3d at 1174.  Here, in contrast, the ALJ failed to account for identified limitations in plaintiff's ability to handle the demands of unskilled work, particularly in the

////

---

[8] Plaintiff also argues that the ALJ failed to consider the discrepancy between impairments found by Drs. Stiles, Regan and Gross and the specific abilities necessary for unskilled work according to the Program Operations Manual System ("POMS") at DI25020.010B(3). POMS is the SSA's "internal agency document used by employees to process claims." Carillo-Yeras v. Astrue, 671 F.3d 731, 735 (9th Cir. 2011).  While the POMS may be entitled to respect where it persuasively interprets an ambiguous regulation, it does not impose judicially-enforceable duties on the ALJ. See id.  Accordingly, the court finds no error in the ALJ's failure to expressly consider the factors identified by DI25020.010B(3).

context of interaction with supervisors and coworkers per Dr. Stiles.[9]

For the reasons explained above, the court concludes that the ALJ erred in failing to capture the limitations found by medical sources he correctly found were entitled to "substantial" and "great" weight.

### B. The ALJ's Credibility Determinations

#### 1. Plaintiff's Testimony

At the time of his testimony, Mr. Hicks was homeless and living in a tent. AR 36 (ECF No. 12-3 at 37). He testified that he had lived in an apartment with his girlfriend three years previously. At that time, he did not change bed linens; he put his laundry in the washer and dryer but his girlfriend carried it to the laundry room; he didn't vacuum, mop or clean the bathrooms, AR 39-40 (ECF No. 12-3 at 40-41). Plaintiff prepared perhaps 3 meals per week, and did not shop by himself. AR 40 (ECF No. 12-3 at 41).

Plaintiff testified that he attends church almost every Sunday. AR 40-41 (ECF No. 12-3 at 40-41). He goes out to a movie two to three times a year. AR 41 (ECF. No 12-3 at 40). He walks for around ½ hour to 45 minutes for exercise and then he has to rest. Id. He has a single male friend, who visits him at the campsite where he lives. Sometimes they take the bus or the light rail to visit parks or go out to eat. AR 42 (ECF No. 12-3 at 42).

Because plaintiff's physical impairments are not at issue here, the court omits summary of plaintiff's testimony about his physical pain, other than to note that this testimony is generally consistent with plaintiff's reports to the various doctors who examined him. He stated that he doesn't know if he could work an 8 hour day, as he usually lies down for about 5 hours during the middle of each day. AR 54-55 (ECF No. 12-3 at 55-56).

Regarding his mental health, plaintiff testified that he experiences severe mood swings that are a problem for him "every minute." AR 56-57 (ECF No. 12-3 at 57-58). Medication (Depakote) helps "to an extent," but plaintiff experiences daily mood swings even on medication.

---

[9] The same analysis applies to the ALJ's failure to account for plaintiff's impaired ability to complete a normal workday/work week without interruptions from psychologically-based symptoms; get along with coworkers without distracting them or exhibiting behavior extremes; etc. as found by Drs. Regan and Gross.

Id. Plaintiff's chronic physical pain makes it harder to control his mood. AR 57-58 (ECF No. 12-3 at 58-59). The mood swings make it difficult to interact with other people. AR 59 (ECF No. 12-3 at 60). Plaintiff experiences anxiety "quite often," and experiences periodic panic attacks in which he feels like the walls are closing in on him. AR 59-60 (ECF No. 12-3 at 60-61). The last such panic attack sent him to the hospital. AR 59-61 (ECF No. 12-3 at 60-62). Alcohol and drug abuse have been serious problems in the past, but plaintiff was currently sober. AR 45-46, 57 (ECF No. 12-3 at 46-47, 58).

Plaintiff testified that if he had a job that required little interaction with other people, such as envelope stuffing, he would still have trouble and make frequent mistakes because he tends to lose concentration frequently. AR 62 (ECF No. 12-3 at 63).

### 2. Third Party Witness Statements

Both plaintiff's mother and plaintiff's father provided third-party witness statements. William Hicks, Sr. reports that his son can't stand long because of "constant bending to pick up bottles and cans," AR 295 (ECF No. 12-7 at 66), earns barely enough to live from collecting recyclables, stands only minutes at a time, and doesn't sleep well due to pain. AR 296 (ECF No. 12-7 at 67). He can prepare simple meals like sandwiches but eats from food lines more regularly. AR 297 (ECF No. 12-7 at 68). He does clean his clothes but it is difficult for him because of problems bending. Id. He can't walk for more than 20 minutes and then must rest. AR 300 (ECF No. 12-7 at 71). He can use public transportation without assistance but he doesn't drive. AR 298 (ECF No. 12-7 at 69). He shops occasionally at the dollar store using his recycling money, but he can't pay his own bills or use a check book. Id. He showers and washes clothes once a week and occasionally visits the community center and other locations, but with his back problem it has been almost impossible for him to relax and enjoy life. AR 299 (ECF No. 12-7 at 70). It is hard for him to talk with others. AR 300 (ECF No. 12-7 at 71). He gets along "average" with authority figures but he cannot handle stress or changes in routine at all. AR 301 (ECF No. 12-7 at 72).

Priscilla Hicks reported her son has intense pain, so has trouble sleeping and stays off his feet as much as he can. AR 349-350 (ECF No. 12-7 at 120-121). He can see to his personal care.

13


1 AR 350 (ECF No. 12-7 at 121).  He must be given notes and have alarms set to remind him to
2 take his medication.  AR 351 (ECF No. 12-7 at 122).  He can prepare sandwiches and soups but
3 does not do household chores.  Id.  He can walk up to 30 minutes before needing to rest, and can
4 use public transportation, but he doesn't drive.  AR 352 (ECF No. 12-7 at 123).  He can pay his
5 bills but does not do any banking.  Id.  He watches TV but not often, because he can't focus and
6 loses interest quickly.  AR 353 (ECF No. 1207 at 124).  He stays in touch with his family through
7 telephone calls and emails weekly.  Id.  He gets along with authority figures but does not handle
8 stress or changes in routine at all, and he often feels like someone is following him.  AR 355
9 (ECF No. 12-7 at 126).  In summary, she reports that he has a hard time remembering things he
10 has to do, is easily distracted, and can't stand for long periods of time or bend too far because of
11 pain.  AR 356 (ECF No. 23-7 at 127).

        3.   The ALJ's Findings

The ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible. . ."  AR 20 (ECF No. 12-3 at 21). First, the ALJ noted that plaintiff's activities of daily living are inconsistent with his complaints of disabling symptoms.  Second, the ALJ stated that plaintiff had experienced "other non-medical problems" such as a romantic breakup in 2010, which suggested that at least "some" of plaintiff's problems could be situational and not medical.  Id.  The ALJ found that both plaintiff's statements and the third party statements were "not credible" overall "in light of the discrepancies between [plaintiff's] assertions and the information contained in the documentary reports and the reports of the treating and examining practitioners."  Id.  Finally, plaintiff's demeanor while testifying at the hearing was also found to be "generally unpersuasive."  Id.[10]

The ALJ provided additional grounds for discounting the third-party reports.  First, the ALJ stated that their accuracy was questionable because plaintiff's parents are not trained to make exacting observations of medical signs and symptoms.  Second, he stated that the third party evidence "also likely reflects the claimant's symptomatological exaggerations."  Id.  Third, the

---

[10] The ALJ specifically noted that his observation about demeanor was not determinative of the credibility determination.  Id.

14

parents were likely biased by their relationship to plaintiff. Id. Finally and most importantly, the ALJ stated without elaboration that the third party statements are not consistent with "the opinions and observations by medical doctors in this case." Id.

4. Discussion

Having found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, AR 20 (ECF No. 12-3 at 21), the ALJ was required to articulate "specific, clear, and convincing reasons" for rejecting plaintiff's testimony about the severity of his symptoms. Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014). The decision here fails to satisfy that standard.

First, the ALJ's decision fails the specificity and clarity standard because the court cannot determine what parts of plaintiff's testimony was rejected. Plaintiff testified about the severity and limiting effects of his physical problems and subjective pain, and also about the severity and limiting effects of his bipolar disorder and related mood swings and anxiety. It is impossible to determine what specific testimony regarding symptoms was rejected, on what grounds. In discussing the inconsistencies he perceived between plaintiff's testimony and his activities of daily living, the ALJ focused primarily on physical activities such as bending to pick up bottles and cans. AR 20 (ECF No. 12-3 at 21). It appears, but is impossible to determine with confidence, that the ALJ was primarily rejecting the plaintiff's testimony regarding his physical capacity to sustain any kind of work over an 8-hours day.

The ALJ also cites evidence that plaintiff "talks with others a couple times a week" and "gets along well with authority figures" as inconsistent with his claims about the severity of his symptoms. Id. The ALJ does not indicate how talking with other people a couple of times a week is inconsistent with any of plaintiff's testimony about his mental health symptoms, including daily mood swings, anxiety, and panic attacks. No such inconsistency is apparent to the undersigned. It is also far from obvious that plaintiff's indication on a questionnaire that he gets along well with authority figures, AR 311 (ECF No. 12-7 at 82) (cited by ALJ as Exhibit 9E20),[11]

---

[11] Question: "How well do you get along with authority figures? (For example, police, bosses, landlords or teachers.)" Answer: "Well." Id.

15

1  is inconsistent with any of his testimony about the severity of his anxiety and mood swings.

2  The ALJ's own speculation about the impact of plaintiff's 2010 break-up with his fiancé
3  on the severity of his symptoms is unsupported by any citation to the medical record, and is not
4  compelled by common sense.  While changes in relationship status can and often do affect mood,
5  the ALJ does not explain why he thought situational factors were determinative of plaintiff's
6  "difficulties" at the time of the hearing in 2013.

7  As to both plaintiff's own testimony and the statements of his parents, the ALJ asserted
8  there was inconsistency with "information contained in the documentary reports and the reports
9  of the treating and examining practitioners." AR 20 (ECF No. 12-3 at 21). The ALJ does not,
10 however, identify any specific medical reports that conflict with specific portions of the testimony
11 or the third party reports. This is error. See Brown-Hunter v. Colvin, 798 F.3d 749, 755-56 (9th
12 Cir. 2015) (finding error where ALJ failed to specifically identify which of plaintiff's testimonial
13 statements he found to be non-credible, and made a conclusory finding of inconsistency with the
14 RFC).

15 The ALJ's other reasons for rejecting the parents' statements are generic: parents are
16 likely biased in favor of their children, and likely to endorse their children's exaggerated
17 subjective claims. The ALJ is required to provide specific reasons, germane to each witness, for
18 disregarding lay observation evidence. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).
19 The ALJ did not do so here. Moreover, the parents' lack of medical training is what makes them
20 lay witnesses, but it does not undermine their credibility as to what they have personally
21 observed. And as with plaintiff's testimony, the ALJ's assertion of inconsistency with the
22 medical record is not supported by citations to that record, or other specification that would
23 permit review of the asserted inconsistency.

24 For all these reasons, the ALJ erred in assessing the credibility of plaintiff and the third-
25 party statements.

VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 18) is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 27) is DENIED;

3. This matter is remanded to the ALJ for further proceedings consistent with this order;

4. The Clerk of the Court shall enter judgment for plaintiff and close this case.

DATED: September 26, 2016

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE